## Shoemaker *versus* King.

40  107
134  524

40    107
40SC 2566

*Contract to pay the Debt of Another, when valid.*

1. A firm sold out their partnership effects to another, who agreed verbally to pay the firm debts. One of the firm creditors sued the purchaser for his debt, relying on the contract of sale, without showing that he was a party to it. *Held*, that he could not recover, for the agreement upon which the action was brought was not in writing and signed by the party to be charged therewith, as required by the Act 26th April 1855.

2. Though such a contract is valid between the immediate parties to it, it is void as a contract in favour of the creditors of the parties, unless they, as a part of the arrangement, give up their original claims and accept the new contract instead. Without this it is void, when *expressly* made to the creditors, and therefore it cannot be *implied* as made to them. While the old debt remains, the new contract cannot be a substituted, but is only a collateral one —a promise to pay another's debt, which is forbidden by the statute, as a cause of action.

ERROR to the Common Pleas of *Dauphin county*.

This was an action of *assumpsit*, brought to January Term 1860, No. 15, by Anthony King against John J. Shoemaker, in which, on the issue raised by the plea, the jury found the following special verdict:—

" The jury find that the firm of Harper & Reese owed Anthony King, the plaintiff, $130.59 on the 18th of June 1859. Prior to that time the firm owed the defendant, Shoemaker, $485, for which they gave him their judgment, made part of this finding. They also gave said Shoemaker a mortgage for $1000, to cover future expected advances, but none were ever made under it. Said Harper & Reese had, prior to that time, built a shop and certain machinery on a lot of said Shoemaker, rented by them. at $60 per annum, and Shoemaker had placed therein certain lathes and planing-machines, worth about $1300, for their use, but the property was to remain his until paid for. No time of payment was fixed, but it was to be done when they were able, they paying interest in the mean time. In June 1859, Shoemaker issued a *fi. fa.* on his judgment of $485 aforesaid, and levied on all the property of the firm, the sheriff closing the shop. On the 22d day of June 1859, the said Harper & Reese made a bill of sale to said Shoemaker of their shop, all the materials, fixtures, book accounts, &c., for the nominal consideration of $1500, but nothing whatever was paid except the debt of $485, which still stood open ; but Shoemaker then agreed with Harper that if they (the firm) would make him the bill of sale, he (Shoemaker) would pay all the debts owing by the said firm of Harper & Reese, and carry on the shop for one year, giving employment to them, paying them by the day, and giving to the said Harper extra wages. At the time this arrangement was proposed, Shoemaker inquired of Harper how much the bills (being the debts)

[Shoemaker *v.* King.]

due by the said firm amounted to, and was informed that the bills (being the debts) they owed were between $500 and $600; and he then agreed, in consideration that the said firm would make him the bill of sale aforesaid, he, the said Shoemaker, would pay all the debts of the firm, and carry on the shop as aforesaid. We find that the property assigned to Shoemaker, including the claims due the firm of Harper & Reese, were worth $1885, and that all of the debts of the firm amounted to about $1315, exclusive of Shoemaker's.

" We find that the promise to pay all of the debts of the firm was made before the bill of sale was executed, and was part of the consideration for making the same; but that no particular conditions were named, nor was the exact amount of the debts due to any one specified. That soon after the arrangement was made as aforesaid, and after the bill of sale executed, Harper informed King, the plaintiff, of the promise of Shoemaker. We find that no direct or express promise was made by Shoemaker to King to pay him the debt in dispute, and have no other evidence of his (King's) acquiescence in the promise made to Harper than is implied from his (King's) bringing this suit, from which we find that he (King) agreed to accept said promise.

" We further find that said King, on the 28th day of January, A. D. 1861, released said Harper individually, and as a member of the firm, from any liability to him for their debt aforesaid, for the purpose of using the testimony of said J. C. Harper as a witness in this cause.

" If, from the foregoing facts, the court shall be of opinion that J. J. Shoemaker is liable to Anthony King for the whole of the debt due him by Harper & Reese, we find in his favour the said sum of $130.59, with interest thereon, after six months from the 18th of June 1859. If the court shall be of the opinion that he is entitled to any less amount than the whole debt, we find in his favour the amount to be determined by the court from the facts stated. If the court shall be of the opinion that the plaintiff, on the facts stated, is not entitled to recover, we find for the defendant."

April 8th 1861. The court gave judgment on the above verdict in favour of the plaintiff for the sum of $144.72 and costs of suit, being the amount of the original debt found, and interest thereon; whereupon the defendant sued out this writ, and assigned for error here the giving judgment as above stated.

*R. A. Lamberton* and *David Mumma, Jr.*, for the plaintiff in error, argued that the contract set out in the special verdict, was a promise to pay the debt of another, and was, therefore, within the Statute of Frauds and Perjuries, as re-enacted in the Act of April 26th 1855, Pamph. L. 308, citing and relying on Petriken

[Shoemaker *v.* King.]

*v.* Baldy, 7 W. & S. 430; Unangst *v.* Hibler, 2 Casey 153; Mc-Quewans *v.* Hamlin, 6 Casey 217 and 11 Id. 518; Tucker *v.* Bitting, 8 Id. 428; Kuhn's Executor *v.* Young, 10 Id. 60; Smith *v.* Findley, 3 Humph. 330; Curtis *v.* Brown, 5 Cush. 488; Bukmyr *v.* Darnell, Salk. 27; Matson *v.* Wharam, 2 Term Rep. 80; Anderson *v.* Hayman, 1 H. Bl. 120; Jackson *v.* Raynor, 12 Johns. 291; Simpson *v.* Patten, 4 Johns. 422; Bird *v.* Gammer, 3 Bing. N. C. 883; Butcher *v.* Stewart, 11 M. & W. 857; Barnhart *v.* Riddle, 5 Casey 98.

*John C. Kunkel,* for defendant in error.—Property worth $1885 was transferred by Reese & Harper to Shoemaker, for a nominal consideration of $1500, while his claim against the firm was only $485, under a promise that he would pay all the debts of the firm. King's debt for $130.59 was among them; and, although the special verdict finds that there was no direct express promise by Shoemaker to King for the payment of this debt, it being a debt of the firm, was as certainly included within the promise, as that the whole includes the parts. The authorities cited by the court below fully establish the doctrine that a promise to one for the benefit of another, enables that person to sue in his own name : See Hinds *v.* Holdship, 2 Watts 104.

The promise of Shoemaker was in no sense collateral, but independent and absolute. He undertook for his own benefit, and for a valuable consideration, to pay another's debt in discharge of his own. The consideration was new and original, being the assignment to himself of all the effects of King's debtor, and the contract was between different parties. On each of these points, the authorities cited by the court below show the case not to be within the Statute of Frauds. The object of the statute being to prevent fraud, it would be a perversion of its intention to apply its provisions where the promissor has deprived the creditor of the means of collecting his debt, and received property far beyond the amount of his assumption.

The release of Harper by King was to render him competent as a witness, and could not operate to discharge Shoemaker.

If Reese & Harper remained liable to King, it was under a different and distinct contract from that upon which it was sought to hold Shoemaker. The relation of principal and surety does not hold between them and Shoemaker. The latter, having received the property, was in equity bound to pay this as his own proper debt.

The opinion of the court was delivered, July 24th 1861, by

LOWRIE, C. J.—Harper & Reese sold out their partnership effects to Shoemaker, he agreeing verbally with them to pay their firm debts. King holds one of these firm debts and sues

[Shoemaker *v.* King.]

for it, relying on the contract just stated, and not showing that he was a party to it. Can he recover?

We think that the Act of 26th April 1855, § 1, forbids it by declaring that no action shall be brought to charge the defendant upon any special promise to answer for the debt or default of another, unless the agreement be in writing and signed by the party to be charged.

The decided weight of authority and of reason declares that, though such a contract as the present is valid between the immediate parties to it, it is void as a contract in favour of the creditors of one of them, unless they, as part of the arrangement, give up their original claims and accept the new contract in their stead. Without this it is void even when expressly made to those creditors, and of course it cannot be *implied* as made to them. While the old debt remains, the new contract cannot be a substituted, but only a collateral one, a promise to pay another's debt, and it is forbidden by the statute as a cause of action: Pitman on Princ. & S. 8, 13–26; 11 Ad. & E. 438; 22 Conn. R. 317; 1 Gray 391; 3 Humph. 330; 5 Cush. 488; 11 Id. 1; 30 Eng. L. & E. 510; 13 M. & W. 570; 8 B. & C. 728; 25 Wend. 247; 20 Vermont 205; 28 Id. 135; 29 Id. 169; 1 Sandford S. C. R. 514; 19 Barb. 258; 11 Grat. 636; 17 Ill. R. 88, 105; 2 Jones Law R. 329; 10 Ired. 13; 13 Id. 86; 3 Id. 187.

Yet we must not be understood as questioning that numerous class of cases where a debtor puts money or other means in the hands of another to be delivered to a particular creditor of his, and the creditor has been held to be entitled to sue. Some of this class of cases no doubt crowd hard upon the class to which the present one belongs. Yet they present merely a mode in which the debtor pays his own debt. That was only in part and incidentally a purpose of this arrangement. We may need some day to distinguish these classes more accurately, and we had better not attempt it, until some case arises that demands such a distinction.

> Judgment reversed, and judgment for the defendant below.